# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# Richmond Division

UNITED STATES OF AMERICA )
)
v. ) Case No. 3:18CR124-1–HEH
)
ALHAKKA CAMPBELL, )
)
      Defendant. )

## MEMORANDUM OPINION
### (Defendant's Motion to Dismiss Count Two of the Indictment)

The Defendant, Alhakka Campbell ("Defendant"), was indicted by a federal grand jury for armed bank robbery, in violation of 18 U.S.C. §§ 2113(a) and (d) and 2, and using, carrying, and brandishing a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A). Presently before the Court is the Defendant's Motion to Dismiss Count Two of the Indictment for failure to plead a prosecutable offense. The government has responded and argument was heard on December 7, 2018.

The Defendant's core contention is that the charge of armed bank robbery, in violation of 18 U.S.C. § 2113(a) and (d), fails to qualify categorically as a predicate crime of violence under the black letter language of 18 U.S.C. § 924(c). This argument trips at the starting gate because the United States Court of Appeals for the Fourth Circuit found armed bank robbery to be a crime of violence in *United States v. McNeal*, 818 F.3d 141, 157 (4th Cir. 2016). The Fourth Circuit "held in *McNeal* that the term 'intimidation,' as used in the federal bank robbery statute, required the threatened use of physical force, and that, therefore, the federal crime of bank robbery categorically

qualified as a crime of violence under the force clause of Section 924(c)(3)." *United States v. Evans*, 848 F.3d, 242, 247 (4th Cir. 2017) (citing *McNeal*, 818 F.3d at 153). Section 924(c) provides an enhanced period of imprisonment for using, carrying, or brandishing a firearm in furtherance of a crime of violence.

Second, the analytical framework underlying the Defendant's argument is dependent on the assumption that the sufficiency of an indictment to state a crime of violence is reviewable, pretrial, employing a categorical analysis framework. Under this narrowly-focused lens, the Court's analysis is both informed and constrained by the elements of the underlying statute. This approach requires the Court to disregard the allegations in the Indictment that a firearm was displayed during the robbery, endangering the lives of bank employees and customers. Count One of the Indictment reads as follows:

> On or about November 17, 2017, in the Eastern District of Virginia, the defendants, ALHAKKA CAMPBELL and JOHN CAMPBELL, aided and abetted by one another, did knowingly and unlawfully, by force and violence, and by intimidation, take from the person and presence of another, namely employees of the Wells Fargo Bank located at 5610 Brook Road, Henrico, Virginia, approximately $5,197.00 in United States currency, money belonging to and in the care, custody, control, management and possession of the Wells Fargo Bank, the deposits of which were then insured by the Federal Deposit Insurance Corporation, and in committing such offense, the defendants did assault and put in jeopardy the life of other persons, namely bank employees and customers, by the use of a dangerous weapon, that is, a firearm.
> (In violation of Title 18, United States Code, Sections 2113(a), 2113(d), and 2.)

Count Two of the Indictment reads as follows:

> On or about November 17, 2017, in Henrico, Virginia, in the Eastern District of Virginia, the defendants, ALHAKKA CAMPBELL and JOHN

> CAMPBELL, aided and abetted by one another, did knowingly and unlawfully use, carry, and brandish a firearm during and in relation to a crime of violence for which the defendants may be prosecuted in a court of the United States, that is, armed bank robbery, as charged in Count One of this Indictment.
> (In violation of Title 18, United States Code, Sections 924(c)(1)(A) and 2.)

(Indictment 1–2, ECF No. 1.)

Before turning to the substance of the Defendant's argument, it is important to clarify the origin and purpose of the categorical analysis regimen deployed by the Defendant to challenge Count Two of the Indictment. The value and utility of employing a categorical analysis in evaluating the present firearm charge before the Court is questionable since the violent nature of the alleged robbery will be demonstrated by the evidence at trial. As the Government notes in its Response in Opposition, "[a] fact-finder can readily determine whether an underlying offense . . . by its nature, involves the use of physical force in the course of its commission without needing to consider what the ordinary case of that offense may be." (Gov't's Resp. Opp'n Def.'s Mot. Dismiss Count Two 14, ECF No. 29 (hereinafter "Gov't's Resp.") (internal quotation marks omitted).) Aside from its narrow application in sentencing proceedings, where the violent nature of a *prior conviction* is at issue, the categorical approach has rarely been deployed to determine *pretrial* whether a crime qualifies as a § 924(c) crime of violence. Its application requires a court to confine its analysis to the statutory elements of offense of conviction, typically determined from a cold record of a prior court proceeding. The utility of the categorical approach is best explained by its genesis.

3

In unveiling the concepts of categorical and modified categorical analyses, the United States Supreme Court in *Taylor v. United States*, 495 U.S. 575 (1990), focused on the sentencing enhancements provided under the Armed Career Criminal Act (the "ACCA"). The ACCA provided for enhanced punishment for persons with three previous convictions for "a violent felony or a serious drug offense." *Id.* at 582 (citing 18 U.S.C. § 924(e)(1)). In discussing the application of the enhancements provided in 18 U.S.C. § 924, the Supreme Court concluded that "Congress intended the sentencing court to look only to the fact that the defendant had been convicted of crimes falling within certain categories, and not to the facts underlying the prior convictions." *Id.* at 600. The Court in *Taylor* went further to explain the rationale underlying the restrictive scope of the categorical analysis, particularly in light of the limited record before the sentencing court.

> If Congress had meant to adopt an approach that would require the sentencing court to engage in an elaborate factfinding process regarding the defendant's prior offenses, surely this would have been mentioned somewhere in the legislative history. . . . [T]he practical difficulties and potential unfairness of a factual approach are daunting. In all cases where the Government alleges that the defendant's actual conduct would fit the generic definition of [a crime of violence], the trial court would have to determine what that conduct was. In some cases, the indictment or other charging paper might reveal the theory or theories of the case presented to the jury. In other cases, however, only the Government's actual proof at trial would indicate whether the defendant's conduct constituted [a crime of violence].

*Id.* at 601.

The Court in *Taylor* concluded that the only plausible interpretation of the enhancement provisions of the ACCA is that "it generally requires the trial court to look

only to the fact of conviction and the statutory definition of the prior offense." *Id.* at 602. The analytical construct evolving from *Taylor* has been uniformly applied by federal courts in determining whether sentencing enhancement statutes apply to qualifying offenses of conviction.[1]

More recently, the Supreme Court in *Johnson v. United States*, 135 S. Ct. 2551 (2015), in which the Court found the so-called "residual clause" of the ACCA, 18 U.S.C. § 924(e)(2)(B), to violate the Due Process Clause, the Court invoked the teachings of *Taylor* to reiterate the office of the categorical approach.

> *Taylor* explained that the relevant part of the Armed Career Criminal Act refers to a person who . . . has three previous convictions for—not a person who has committed—three previous violent felonies or drug offenses. This emphasis on convictions indicates that Congress intended the sentencing court to look only to the fact that the defendant had been convicted of crimes falling within certain categories, and not to the facts underlying the prior convictions. *Taylor* also pointed out the utter impracticability of requiring a sentencing court to reconstruct, long after the original conviction, the conduct underlying that conviction. For example, if the original conviction rested on a guilty plea, no record of the underlying facts may be available. The only plausible interpretation of the law, therefore, requires use of the categorical approach.

*Johnson*, 135 S. Ct. at 2562 (alterations in original) (internal quotation marks and citations omitted).

Cases in which the categorical approach has been utilized outside the sentencing context are sparse. In *United States v. Naughton*, 621 F. App'x 170 (4th Cir. 2015), and

---

[1] As the Court explained in *Moncrieffe v. Holder*, "[t]he categorical approach serves 'practical' purposes: it promotes judicial and administrative efficiency by precluding the relitigation of past convictions in minitrials conducted long after the fact." 569 U.S. 184, 200–01 (2013) (citing *Chambers v. United States*, 555 U.S. 122, 125 (2009)).

5

*United States v. Fuertes*, 805 F.3d 485 (4th Cir. 2015), the Fourth Circuit adopted a categorical approach in determining whether the district court erred by instructing the jury that the charged criminal offense categorically qualified as a § 924(c) crime of violence. In *United States v. Vinson*, 805 F.3d 120 (4th Cir. 2015), the defendant was charged under 18 U.S.C. § 922(g)(9) with possession of a firearm by a prohibited person, namely an individual convicted of the misdemeanor crime of domestic violence. There, the trial court was required to evaluate whether a prior conviction categorically qualified as a misdemeanor crime of domestic violence. The trial court properly focused on the elements of the prior offense rather than the conduct underlying the conviction. 805 F.3d at 123. In that context, the Fourth Circuit affirmed the trial court's employment of the categorical approach.

More recently, the Fourth Circuit in *United States v. Evans* upheld the trial court's determination that carjacking was a crime of violence prior to accepting a plea of guilty pursuant to a plea agreement which preserved the defendant's right of appeal. 848 F.3d at 245. Neither the district court nor the appellate court addressed the propriety of employing the categorical approach at that stage of the proceedings.

While the government urges a case specific approach, the Defendant advances a number of additional arguments predicated on the application of a categorical ordinary case approach. It essentially entails detaching the charging language in an indictment from the underlying statute. With respect to the armed bank robbery count, Defendant argues that the language in the statute is broad enough to encompass conduct that falls short of the "substantial force required by the Supreme Court to qualify under the force

6

clause" of 18 U.S.C. § 924(c)(3)(A). (Def.'s Mot. Dismiss Count Two 2–3, ECF No. 27.) He argues that "[h]ere, bank robbery *can* be committed without violent force, both by extortion[2] and by chemical irritants." (*Id.* at 6 (emphasis added).)

The Defendant's argument has two fatal flaws. First, the cases cited to animate his argument are inapposite. In *United States v. Winston*, the issue before the court was whether a prior conviction for robbery, under the Code of Virginia, constituted a crime of violence under the categorical approach. 850 F.3d 677 (4th Cir. 2017). In *United States v. Fuertes*, the Fourth Circuit reversed the district court, holding that it "plainly erred in instructing the jury that sex trafficking by force, fraud, or coercion is categorically a crime of violence . . . ." 805 F.3d at 501. In *Fuertes*, the Fourth Circuit noted that "[t]he point of the categorical inquiry is not to determine whether the defendant's conduct *could* support a conviction for a crime of violence, but to determine whether the defendant was *in fact convicted* of a crime that qualifies as a crime of violence." *Id.* at 498 (quoting *United States v. Cabrera-Umanzor*, 728 F.3d 347, 350 (4th Cir. 2013)) (emphasis in original).

Second, the underlying crime of violence in this case—armed bank robbery—specifically alleges that "the defendants did assault and put in jeopardy the life of other persons, . . . by the use of a dangerous weapon, that is, a firearm." (Indictment 1–2.)

---

[2] The crime of extortion is a separate, divisible offense within 18 U.S.C. § 2113(a). *United States v. Watson*, 881 F.3d 782, 786 (9th Cir. 2018), *cert. denied*, 139 S. Ct. 203 (2018). "[Section] 2113(a) does not contain one indivisible offense. Instead, it contains at least two separate offenses, bank robbery and bank extortion." *Id.*

7

The Defendant also argues that the statute allegedly violated in Count Two, charging use, carrying, and brandishing a firearm during and in relation to a crime of violence, 18 U.S.C. § 924(c)(3)(B), is void for vagueness. In significant part, the Defendant relies on the Supreme Court's opinion in *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018). In *Dimaya*, the Board of Immigration Appeals determined that Dimaya's California convictions for first degree burglary were categorically "crimes of violence," rendering him removable for having been previously convicted of an aggravated felony. Once again, the Court in *Dimaya* applied a specially-tailored version of the categorical approach to determine if the prior convictions constituted aggravated felonies. In making that determination, the Court concluded that the term "crime of violence," in the definition of an aggravated felony, was impermissibly vague. *Id.* at 1223. It is important to note that in *Dimaya*, the Court employed a textual rather than factual analysis. Writing for the Court, Justice Kagan noted that the analytical framework "requires a court to picture the kind of conduct that the crime involves in the ordinary case, and to judge whether that abstraction presents some not-well-specified-yet-significantly-large degree of risk." *Id.* at 1216 (citing *Johnson*, 135 S. Ct. 2556–57) (internal quotations marks omitted). In the immediate case, the trier of fact, as well as the Court, have the opportunity to hear the evidence first hand and to determine whether the Defendant's actions constitute a crime of violence.

Facially challenging the sufficiency of Count Two on an alternative front, the Defendant maintains that it fails to allege a critical element, "the existence of a substantial risk that physical force will be used, . . . ." (Def.'s Mot. Dismiss Count Two

16.) He also maintains that Count Two is duplicitous because the allegation "did knowingly use, carry, and brandish" alleges multiple distinct and separate offenses. Defendant contends that while "use" and "carry" of a firearm likely constitute a single offense, brandishing a firearm is distinct because it carries a seven-year mandatory minimum, as opposed to a five-year mandatory minimum. *See* 18 U.S.C. § 924(c)(1)(A)(ii).

The pertinent language in Count Two tracks the phraseology of 18 U.S.C. § 924(c)(A)(ii). That is all the law requires. *See Hamling v. United States*, 418 U.S. 87, 117 (1974). And, as mentioned above, Count One of the Indictment specifically alleges that "the defendants did assault and put in jeopardy the life of other persons, . . . by the use of a dangerous weapon, that is, a firearm." (Indictment 1–2.) This language clearly imports a substantial risk of physical force.

Count Two specifies that the Defendants did unlawfully use, carry, and brandish a firearm during and in relation to a crime of violence—armed bank robbery. The Fourth Circuit has unequivocally found bank robbery to be a crime of violence. *See McNeal*, 818 F.3d at 157. Furthermore, as the government correctly argues, the Fourth Circuit's holding in *McNeal* is consistent with similar holdings from other Federal Circuit Courts of Appeal. *See e.g.*, *United States v. Ellison*, 866 F.3d 32, 33 (1st Cir. 2017) (affirming that bank robbery by intimidation qualified as a crime of violence under the career offender sentencing guideline); *United States v. Wilson*, 880 F.3d 80, 84–85 (3d Cir. 2018) ("Unarmed bank robbery by intimidation clearly does involve the 'threatened use of physical force against the person of another[.]'") (quoting U.S.S.G. § 4B1.2(a)(1));

9

*United States v. Brewer*, 848 F.3d 711, 716 (5th Cir. 2017) (same); *United States v. McBride*, 826 F.3d 293, 296 (6th Cir. 2016) (previous convictions under § 2113 qualify as crimes of violence under the career offender guideline); *United States v. Williams*, 864 F.3d 826, 830 (7th Cir. 2017) ("We agree with the district court that bank robbery by intimidation defined in § 2113(a) is a crime of violence under the elements clause of § 924(c)(3)(A)."); *United States v. Deiter*, 890 F.3d 1203, 1216 (10th Cir. 2018) (affirming that aiding and abetting bank robbery was a crime of violence pursuant to the ACCA).

Defendant's argument that Count Two is duplicitous fairs no better. Although the Indictment alleges that the Defendants did unlawfully use, carry, and brandish a firearm, it changes only a single offense. It is a fossilized principle that offenses are pled in the conjunctive and proven in the disjunctive. *United States v. Smith*, 373 F.3d 561, 564 (4th Cir. 2004). Moreover, as a "general rule . . . when a jury returns a guilty verdict on an indictment charging several acts in the conjunctive, . . . the verdict stands if the evidence is sufficient with respect to any one of the acts charged." *Turner v. United States*, 396 U.S. 398, 420 (1970). Therefore, Count Two is properly pled.

With respect to the enhanced mandatory-minimum sentence for brandishing a firearm, this is clearly a distinct element of the offense which must be determined by the jury beyond a reasonable doubt. *See United States v. Strayhorn*, 743 F.3d 917, 926–27 (4th Cir.), *cert. denied*, 572 U.S. 1145 (2014). Of course, whether the firearm was brandished in furtherance of the armed bank robbery is also a factual issue for the jury. *United States v. Perry*, 560 F.3d 246, 254 (4th Cir.), *cert. denied*, 558 U.S. 866 (2009). The government has indicated that it will request the Court to submit a special verdict

form to the jury informing them that they must "separately and unanimously find whether the evidence established that the defendants used, carried *or* brandished the firearm during and in relation to the armed bank robbery offense." (Gov't's Resp. 25.)

Based on the foregoing analysis, the Defendant's Motion to Dismiss Count Two of the Indictment is DENIED.

/s/
Henry E. Hudson
Senior United States District Judge

Date: Dec 18 2018
Richmond, VA