IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA      )
                              )
v.                            )      Criminal No. 3:18-cr-124–HEH-1
                              )
ALHAKKA CAMPBELL,             )
                              )
        Petitioner.           )

## MEMORANDUM OPINION
### (Denying 28 U.S.C. § 2255 Motion)

Petitioner Alhakka Campbell ("Campbell"), a federal inmate proceeding *pro se*,

submitted this motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence

(the "§ 2255 Motion," ECF No. 227).  The Government has responded, asserting that

Campbell's claims lack merit.  (ECF No. 247.)  Campbell filed a Reply.  (ECF No. 252.)

For the reasons set forth below, Campbell's § 2255 Motion will be denied.

## I.    DECIPHERING CAMPBELL'S CLAIMS

Campbell did not use the standard form for filing a § 2255 motion or follow the

structure of that form which complicates the Court's review of his § 2255 Motion.

Campbell also did not set forth any clearly labeled grounds for relief.  At best, Campbell

sets forth the following "Arguments to be Presented for Relief," that he contends will

"show that the 4th and 6th Amendment violations which warrant the setting aside of his

conviction and/or sentence:"[1]

---

[1] The Court employs that pagination assigned to the parties' submissions by the CM/ECF
docketing system.  The Court corrects the capitalization, spelling, punctuation, and spacing in
quotations from Campbell's submissions.

**Case 3:18-cr-00124-HEH   Document 270   Filed 04/30/24   Page 2 of 20 PageID# 3749**

1.) The illegal search and seizure which occurred at 5507 Willis Lane address on the day of the bank robbery.
2.) His trial/appellate counsel's failure to present the requisite evidence adverse to the prosecution's theory of events.
3.) The violation of the rules of evidence in the court's allowing evidence to be seen and examined by the jury, evidence which was not certified.

(Mot. at 2.) As a preliminary matter, Campbell may not raise either "1.)" or "3.)" in this § 2255 Motion. As the Government correctly asserts, to the extent that Campbell intends to challenge the search and seizure, counsel previously challenged the denial of the motion to suppress on appeal and Campbell is barred from relitigating this claim. *United States v. Linder*, 552 F.3d 391, 397 (4th Cir. 2009); *Boeckenhaupt v. United States*, 537 F.2d 1182, 1183 (4th Cir. 1976); (*see* Mot. at 18). To the extent that Campbell attempts to raise a different claim about the purportedly illegality of the search, Campbell is precluded from raising such a challenge because he could have raised, but did not raise, this claim on direct appeal. *Bousley v. United States*, 523 U.S. 614, 622–23 (1998). Similarly, Campbell may not now raise a challenge to the admissibility of evidence for the first time in his § 2255 Motion because his appeal was the appropriate place to raise this issue.[2]

Despite representing that he only has three "Arguments," a review of the § 2255 Motion demonstrates that is untrue. After parsing through his § 2255 Motion, the Court generously construes Campbell to raise the following claims for relief:

Claim One:     Counsel rendered ineffective assistance "for failing to file a motion dismiss and/or challenge, by cross examination, the search warrant affidavit" (Mot. at 2), because:

---

[2] Campbell's initial "2.)" appears to be what the Court construes as Claim Two below.

(a) it contained "glaring misrepresentations of the truth" about the description of the robbers (*id.* at 4–5);

(b) the 3SI GPS trackers were never "found in, on, or around Campbell, the house or his vehicle" (*id.* at 5–6); and,

(c) "[t]here was absolutely no cause for the 10-month delay in requesting the search warrant" for Campbell's cell phone and the delay violated the Fourth Amendment (*id.* at 7–8).

Claim Two:     Counsel rendered ineffective assistance by failing to "subject the prosecution's case to meaningful adversarial testing" (*id.* at 9 (citations omitted)), by presenting "further evidence" including:

(a) evidence of "a neighbor who witnessed Campbell banging loudly while fixing his cousin's truck the night before the robbery" who was not called as a witness by counsel (*id.* at 8–9), "which would have explained the presence of Campbell's DNA profile being present . . . [on] a pair of gloves" (*id.* at 8);

(b) "an alternative timeline" (*id.* at 9);

(c) testimony about a search of a drum in the back yard (*id.* at 9–10); and

(d) that the "boot evidence" was "inconclusive" (*id.* at 11–12).

Claim Three:   Counsel rendered ineffective assistance by failing to "raise an adequate adversarial protest to the evidence sent back to the jury during deliberation"—a "(doo rag) which was located inside the gray/blue hooded sweatshirt"—because it "was not shown in the initial inventory sheet at the outset of the trial." (*Id.* at 12–13.)

Claim Four:    Counsel rendered ineffective assistance by not "object[ing] to sentencing factors within the Presentence Report (PSR) and that created a huge sentencing disparity" because "Campbell's conviction and sentence for Aiding and Abetting a § 924(c) [conviction] is not considered a crime of violence." (*Id.* at 14–15.)[3]

---

[3] As mentioned, Campbell's § 2255 Motion has no structure and does not set forth distinct claims. Rather, it is a running narrative of complaints. To the extent that Campbell has any other claim lurking therein, the Court has reviewed the entire § 2255 Motion and finds it lacks merit.

## II.   PROCEDURAL HISTORY

### A.   Indictment and Trial

On October 11, 2018, a grand jury charged Campbell with armed bank robbery, in violation of 18 U.S.C. §§ 2113(a), 2113(d), and 2 (Count One); and using, carrying, and brandishing a firearm during and in relation to a crime of violence, to wit: armed bank robbery as charged in Count One, in violation of 18 U.S.C. §§ 924(c)(1)(A) and 2 (Count Two).  (Indictment at 1–2, ECF No. 1.)[4]  After a five-day trial, the jury found Campbell guilty of both Count One and Count Two.  (Minute Entry at 1, ECF No. 92; Jury Verdict at 1–2, ECF No. 93.)

### B.   Sentencing

Prior to sentencing, a Presentence Report ("PSR") was prepared.  (ECF No. 107.) Campbell's Base Offense Level under Chapter Two of the United States Sentencing Guidelines ("USSG") was 20.  (PSR ¶ 27.)  Campbell received a two-level enhancement because "[t]he property of a financial institution or post office was taken."  (*Id.* ¶ 28.) Therefore, Campbell's Total Offense Level was 22.  (*Id.* ¶ 37.)  Despite many prior criminal charges, due to a "lack of countable criminal convictions," Campbell's criminal history score was zero, resulting in a criminal history category of I.  (*Id.* ¶¶ 55–56.) Campbell's sentencing guidelines range was 41 to 51 months for Count One, and 84 months to run consecutively for Count Two.  (*Id.* ¶ 116.)  Nevertheless, the statutory punishment for these offenses authorized up to 25 years of incarceration on Count One,

---

[4] Campbell was indicted and tried with his cousin and co-defendant John Campbell.

4

and a mandatory minimum sentence of seven (7) years to life on Count Two, to run consecutively. (*Id.*)  On April 22, 2019, the Court entered judgment against Campbell and sentenced him to 51 months on Count One and 84 months on Count Two to be served consecutively to his sentence for Count One.  (J. at 2, ECF No. 125.)

Campbell appealed.  On April 2, 2021, the United States Court of Appeals for the Fourth Circuit affirmed the decision of this Court.  (ECF No. 188.)

## III.   INEFFECTIVE ASSISTANCE OF COUNSEL

### A.   Applicable Law

To demonstrate ineffective assistance of counsel, a convicted defendant must show first, that counsel's representation was deficient and second, that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  To satisfy the deficient performance prong of *Strickland*, the convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689).  The prejudice component requires a convicted defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.  In analyzing ineffective assistance of counsel claims, it is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. *Id.* at 697.

5

### B.     Challenges to the Search Warrants (Claim One)

#### 1.     Counsel's Arguments for Suppression of the Evidence

Underlying all subparts of Claim One is Campbell's persistent belief that the

search warrants of the house, vehicles, and phones were invalid because the supporting

affidavit contained material misrepresentations and because probable cause did not exist

for their issuance.  These issues were extensively litigated by counsel and were found to

lack merit by this Court and by the United States Court of Appeals for the Fourth Circuit.

In the Motion to Suppress, counsel argued that "the officers submitted [in]sufficient

information to the magistrate for the magistrate to determine that the 3si tracker on which

probable cause depended was reliable and accurate." (Mot. to Suppress at 5, ECF

No. 28.)  Thus, counsel claimed, "there was simply no basis for a magistrate judge to

conclude that the location information of 5507 Willis Lane (and therefore its occupants)

was based on reliable and accurate information." (*Id.* at 6.)

In the search warrant affidavit, officers stated that the GPS tracker did not move

from 5507 Willis Lane.  (*See* Mot. to Suppress Ex. 1 at 4, ECF No. 28–1.)  Counsel

argued that the tracker did in fact move, "a full fifteen minutes before Mr. Alhakka

Campbell was arrested," and "that the tracker had actually come to rest at 5506 Willis

Lane, across the street." (Mot. to Suppress at 6.)  Counsel also argued that there was no

probable cause or reasonable suspicion to arrest Campbell because officers "knew only

that a bank had been robbed by two men, and that 3si had told them the tracker was first

at 5507 (from which Mr. Campbell exited) and then at 5506 (across the street)." (*Id.*

at 7.)  Counsel claimed that the 3SI GPS tracker "was the only thing tying Alhakka

6

Campbell to the robbery at the time of his arrest" and the tracker was not sufficiently

reliable (*id.*), because it "might not be accurate enough to narrow down a particular house

on a particular street." (Dec. 7, 2018 Tr. at 42, ECF No. 143.)

Finally, counsel argued that the search warrant for "[a]ll electronic data on the

cellular devices" was fatally overbroad and amounted to a fishing expedition. (Mot. to

Suppress at 7–8 (emphasis omitted).)

After hearing from the parties, the Court rejected these arguments as follows:

> Of some concern is the information concerning the tracker. The comment - - the statement that is made in the affidavit that the tracker focused for an extended period of time, or for like 14 minutes, I don't recall exactly what it was, on 5507 is not incorrect. It is factually correct that it did.
>
> The fact that the other tracker may have bounced is certainly something that it would have been informative if it had been put in the affidavit. But, however, the question here is whether or not that would have been - - its omission in any way deceived the magistrate.
>
> When you have a tracker that focuses for an extended period of time on 5507 and not deviate from that, I think, would be sufficient for a magistrate to find there was probable cause. And using the good faith reliance of a police officer on the magistrate's conclusions, I think that a . . . reasonably trained police officer could rely upon the magistrate's finding that the information was sufficient to show probable cause.
>
> So I don't find the representations here show that there was any attempt by the affiant in any way to recklessly disregard the truth or to include falsehoods in the affidavit. Could it have been more artfully crafted? That's true in almost every case where a police officer is hurriedly putting together a search warrant where events are unraveling and the police have to act swiftly. So I don't find the level of dishonesty here that would warrant this Court to find that the search warrant wasn't properly granted, so that motion will be denied as well.

(Dec. 7, 2018 Tr. at 64–65.) Campbell challenged the Court's denial of the motion to

suppress on appeal, and the Fourth Circuit concluded that this Court did not err in

denying the motion to suppress the evidence found in the house, car, or from his phone. *United States v. Campbell*, 850 F. App'x 178, 180–81 (4th Cir. 2021).

### 2.    Law Pertaining to Misstatements in a Search Warrant Affidavit

As a preliminary matter, "[a]n accused is generally not entitled to challenge the veracity of a facially valid search warrant affidavit" by way of a motion to suppress. *United States v. Allen*, 631 F.3d 164, 171 (4th Cir. 2011).  However, under *Franks v. Delaware*, 438 U.S. 154 (1978), a defendant is entitled to suppression of evidence seized if, during an evidentiary hearing on the veracity of statements in the affidavit, "perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause." *Id.* at 156.

To be entitled to a *Franks* hearing, "a defendant must make a substantial preliminary showing that (1) law enforcement made a false statement [or omission]; (2) the false statement [or omission] was made knowingly and intentionally, or with reckless disregard for the truth; and (3) the false statement [or omission] was necessary to the finding of probable cause." *United States v. Moody*, 931 F.3d 366, 370 (4th Cir. 2019) (citation omitted) (internal quotation marks omitted).  "[A]llegations of negligence or innocent mistake provide an insufficient basis for a hearing." *United States v. McKenzie-Gude*, 671 F.3d 452, 462 (4th Cir. 2011) (citation omitted) (internal quotation marks omitted).  Furthermore, "'[o]mitted information that is potentially relevant but not dispositive [of the probable cause determination] is not enough to warrant a *Franks*

hearing.'" *Id.* (second alteration in original) (quoting *United States v. Colkley*, 899 F.2d 297, 301 (4th Cir. 1990)).

### 3. Campbell's Claims

In Claim One (a), Campbell argues that counsel rendered ineffective assistance "for failing to file a motion dismiss and/or challenge, by cross examination, the search warrant affidavit" (Mot. at 2), because it contained "glaring misrepresentations of truth" about the descriptions of the robbers (*id.* at 4–5). Campbell contends that "he did not meet the description of any one of the armed bank robbers" because the clothes that he was wearing at the time of his arrest were different than what the robbers were described as wearing in the search warrant affidavit. (*Id.*) However, counsel reasonably eschewed making this argument. By the time of his arrest, Campbell clearly had an opportunity to change his clothes while he was in his cousin's home. (*See* Mot. to Suppress Ex. 1 at 4.) Counsel could have reasonably determined that an argument about differing attire would not prevail as a valid means to challenge the search warrant. Campbell fails to show any deficiency of counsel or resulting prejudice. Claim One (a) will be dismissed.

In Claim One (b), Campbell contends that counsel rendered ineffective assistance "for failing to file a motion to dismiss and/or challenge, by cross examination, the search warrant affidavit" (Mot. at 2), because the 3SI GPS trackers were never "found in, on or around Campbell, the house or his vehicle" (*id.* at 5–6). Campbell argues that "[o]ne glaring, immutable fact remains, there was never any tracker found in, on or around Campbell, the house or his vehicle. This fact should have been submitted by counsel and suppression of the evidence would have been reasonable had counsel been effective."

9

(*Id.* at 5.)  As explained previously, counsel challenged the location data from the GPS trackers in a suppression motion and, during the suppression hearing, argued that the affidavit contained a knowing false statement that the tracker never moved from the house.  (*See* Mot. to Suppress at 1–3, 6–7; Dec. 7, 2018 Tr. at 39–45, 53–59.)  Counsel argued that one of the two trackers reflected that it was located at a house across the street for some period, and that the tracker was the only thing tying Campbell to the robbery.  (*See* Mot. to Suppress at 7.)  The Court rejected this argument because the first tracker never deviated from 5507 Willis Street where Campbell and his co-defendant were located, and this information was sufficient for a magistrate to find probable cause for a warrant.  To the extent that Campbell wished counsel to make some further argument about the tracker location, Campbell fails to show that any additional argument that the tracker was not found on him or in his car would have been met with any success given the Court's ruling on the tracker data.  Thus, counsel was not deficient nor was Campbell prejudiced.  Claim One (b) lacks merit and will be dismissed.[5]

In Claim One (c), Campbell argues that counsel rendered ineffective assistance "for failing to file a motion dismiss and/or challenge, by cross examination, the search

---

[5] The Court notes that Campbell has some vague references to other purported problems with the search warrant affidavit including that counsel never introduced to the jury the state search warrants (Mot. at 6), that the robbers' race was not included in the description of the robbers in the search warrant affidavit (*id.* at 7), and that the search warrant for his Nissan Altima "did not include a material list of the items found in or taken from the vehicle" (*id.*).  First counsel did argue that the search warrant affidavit did not include the race of the robbers, and the Court rejected that argument because it was not a deliberate falsehood.  (Dec. 7, 2018 Tr. at 63–64.) Moreover, Campbell fails to explain, and the Court fails to discern, how counsel was deficient, or how Campbell was prejudiced by counsel's failure to "present this evidence to the jury although [Campbell] insisted counsel do so."  (Mot. at 7.)

warrant affidavit" (Mot. at 2), because "[t]here was absolutely no cause for the 10-month

delay in requesting the search warrant" for Campbell's cell phone and the delay violated

the Fourth Amendment (*id.* at 7–8). The initial search warrant obtained the day of

Campbell's arrest allowed the seizure of his phone as evidence, but it did not specify that

the contents could be searched. (*See* Mot. to Suppress Ex. 3, ECF No. 28–3.) Later, an

FBI agent obtained a search warrant allowing a search of the contents of the phone.

(Mot. to Suppress Ex. 1.) Campbell takes issue with the delay in obtaining this second

warrant. Instead of the vague argument Campbell offers here, counsel chose to focus on

an argument that the search warrant for the phone lacked specificity and was fatally

overbroad. (Mot. to Suppress at 7–8.) Beyond his mere assertion, Campbell fails to

explain why this delay violated the Fourth Amendment.[6] Counsel cannot be faulted for

---

[6] Campbell cites *United States v. Pratt*, 915 F.3d 266 (4th Cir. 2019) with little explanation, to show that the ten-month delay was unreasonable. (*See* Mot. at 3.) In *Pratt*, officers seized Pratt's phone without a warrant, Pratt refused to consent to the seizure or provide a passcode, and then officers waited 31 days to obtain a warrant to search the contents of the phone without any great reason for the delay. *Pratt*, 915 F.3d at 270, 273. Pratt was not in custody during that time. *See id.* The Fourth Circuit found the delay unreasonable. *Id.* at 273. Notably, *Pratt* was decided several months *after* the suppression hearing in Campbell's case. Additionally, the facts are distinguishable. Campbell's phone was seized both pursuant to his arrest and pursuant to a valid state search warrant to seize the phone as evidence. Therefore, *Pratt* does not square with Campbell's case because it involved a warrantless seizure followed by a delay in obtaining a search warrant. *Cf. United States v. Brady*, 577 F. Supp. 3d 420, 427 (E.D. Va. Dec. 23, 2021) (explaining that *Pratt* "involved *warrantless* seizures followed by a delay in obtaining a warrant to search the seized items" in contrast to a phone seized pursuant to "a valid search warrant at the time of the initial seizure" that authorized "not only seizure of all electronic devices, but also a search of their contents for evidence of the crime"). Campbell's phone was seized pursuant to a valid warrant. Then officers later obtained a warrant to search its contents. Counsel reasonably eschewed raising the argument that the delay in obtaining a search warrant for the phone's contents was unreasonable.

failing to advance this argument and Campbell fails to demonstrate any prejudice. Claim One (c) lacks merit and will be dismissed.

### B.    Purported Errors of Counsel at Trial

In Claim Two (a), Campbell first contends that counsel rendered ineffective assistance by failing to "subject the prosecution's case to meaningful adversarial testing" by presenting "further evidence" that a "a neighbor who witnessed Campbell banging loudly while fixing his cousin's truck the night before the robbery" who was not called as a witness by counsel (Mot. at 8–9 (citation omitted)), "would have explained the presence of Campbell's DNA profile being present . . . [on] a pair of gloves" (*id.* at 8). Despite, Campbell's arguments to the contrary, the neighbor, Ms. Davis, did testify at trial. Ms. Davis explained that John Campbell had just moved in a month or two (2) before his arrest, she had not met him and did not know his name. (Jan. 16, 2019 Tr. at 304–05, ECF No. 145.) Ms. Davis noted that John Campbell had a visitor the night before the robbery who fit Alhakka Campbell's description and that John Campbell, and the visitor, were working on John's truck in the driveway that night. (*Id.* at 307–09.) Ms. Davis testified specifically, there "was a lot of banging. Like he was working on his truck." (*Id.* at 310.) Although Ms. Davis did not testify about Campbell wearing the gloves, counsel argued to the jury that based on this witness' testimony, it was likely that Campbell was wearing gloves at the time he was working on the truck, and that naturally, his DNA would be on the gloves. (Jan. 18, 2019 Tr. at 1082–83, ECF No. 147.) Thus, it

is unclear what further Campbell believes counsel should have argued.[7]  Campbell

demonstrates no deficiency of counsel or resulting prejudice and Claim Two (a) will be

dismissed.

In Claim Two (b), Campbell first contends that counsel rendered ineffective

assistance by failing to "subject the prosecution's case to meaningful adversarial testing"

by presenting "further evidence" of "an alternative timeline and the fact that Campbell

had been said, by investigators, to be coming from the home at 5507 Willis Lane with a

bag, which later turned out to be identified as his work lunch, a fact 'conveniently' left

out along with the material list from Campbell's Nissan Ultima." (Mot. at 8–9 (citation

omitted).)  Although Campbell's claim is not entirely clear, the Court believes that

Campbell suggests that counsel failed to argue that Campbell had his work lunch in his

Nissan Altima at the time of his arrest.  However, during cross-examination, counsel

specifically asked Detective John Carter about what was found in the vehicle, and

Detective Carter confirmed that a backpack that appeared to contain lunch items was

recovered from Campbell's Altima.  (Jan. 16, 2019 Tr. at 254–55.)  Thus, the jury heard

testimony that Campbell had his lunch in the car at the time of his arrest.  The Court fails

to discern, and Campbell fails to explain, what further testimony counsel should have

---

[7] To the extent that Campbell wanted counsel to question Ms. Davis about whether she saw him
wearing gloves, such a question would not have been wise to ask.  It was less risky and more
beneficial to argue to the jury that Campbell would have been wearing gloves while working on
the truck, then to ask the witness whether she saw him wearing gloves at 8:30 p.m. in November
and for her to say that she either did not know or did not see him wearing them.

elicited about the lunch items.  Counsel was neither deficient, nor was Campbell

prejudiced by counsel's actions, and Claim Two (b) will be dismissed.

In Claim Two (c), Campbell argues that counsel rendered ineffective assistance by

failing to "subject the prosecution's case to meaningful adversarial testing" by presenting

"further evidence" (Mot. at 8 (citation omitted)), about a search of a drum in the backyard

(*id.* at 10).  Once again, this claim is difficult to understand as presented.  Campbell

argues that, at trial,

> it was established that Lt. Brown heard from Officer Park Smith that
> someone had placed something in a drum in the back yard, but when Officer
> Park Smith, who was not called as a witness to testify, was asked he was said
> to not recall much from that day.  This is according to prosecutor (Mr. Gill),
> who apparently was able to speak for Officer Smith.  Although the court did
> not allow Lt. Brown to testify as to whom it was [] said who put something
> in the back yard drum, it was established by/through [Lt.] Brown's testimony
> that a search of the drum occurred prior to the signing and/or arrival of the
> search warrant.  That searching became a violation of the 4th Amendment's
> unreasonable search and seizure guarantee . . . .  Campbell contends it was
> established that Lt. Brown and Detective Tuzzo were not in any position or
> vantage point to have seen into the back yard, so the fact that their person
> who was said to have made the call over the radio "didn't recall much,"
> should not have been introduced via witness testimony.

(*Id.*)  Campbell contends that "[c]ounsel failed in letting Lt. Brown's testimony as to the

drum be introduced because it was indeed hearsay, and the court knew it would be

prejudicial."  (*Id.*)

Despite Campbell's contention that the search warrant was issued after the drum

was searched, that was not true.  Lt. Brown testified that he followed the GPS tracker to

Willis Lane where it stopped and he set up at a church parking lot nearby.  (Jan. 16, 2019

Tr. at 87, 89–90.)  Other officers arrived to set up a perimeter including officers who

14

could see the back of the house. (*Id.* at 92–93, 99.) Lt. Brown specifically testified that he did not move into the backyard and did not search the drum until after the search warrant arrived. (*Id.* at 116–17.) Thus, Campbell's claim that the barrel was searched before a search warrant was obtained is false and counsel cannot be faulted for failing to attack the search warrant on this ground.

Campbell also appears to allege that the surveillance officers saw someone drop something in the drum and that Lt. Brown later learned it was Campbell. However, the officer who relayed this was not able to recall that information, and, therefore, Campbell argues that testimony should have been excluded. Despite Campbell's representations to the contrary, counsel argued exactly that in a motion to exclude hearsay testimony. (*Id.* at 3–4.) In response, the Government argued that the testimony was necessary to explain why officers were focused on the drums behind the house during the search. (*Id.* at 4–6.) The Court allowed the testimony solely for the purpose of showing why the area was searched, but not for the truth of the matter, and instructed the Government that they could not elicit testimony about who was observed dropping an item into the drum before the search. (*Id.* at 4–9.) After Lt. Brown testified that the surveillance officers saw someone leave the house, lift the lid on a barrel, place a bag in it, close the lid, and then went back into the house, the Court instructed the jury, "Ladies and gentleman, this is offered solely as - - this is not offered for the truth of the matter, but only to show you what information the lieutenant had as a predicate for what action he directed with his officers." (*Id.* at 99.) Thus, counsel successfully limited the testimony of Lt. Brown

about who placed an item in the drum.  Campbell fails to establish any deficiency of counsel or resulting prejudice.  Accordingly, Claim Two (c) will be dismissed.

Finally, in Claim Two (d), Campbell argues that counsel rendered ineffective assistance by failing to "subject the prosecution's case to meaningful adversarial testing" by presenting "further evidence" (Mot. at 8 (citation omitted)), that the "boot evidence" was "inconclusive" (*id.* at 11–12).  Campbell faults counsel for failing to challenge the evidence tying one of his boots to a shoe print that was left by the robber on the bank counter during the robbery.  (*Id.*)  The evidence at trial demonstrated that officers collected a shoe print that was left by the robber as he jumped over the bank counter.  (Jan. 16, 2019 Tr. at 208–09.)  Officers also collected the Nike boots that Campbell was wearing following his arrest on the day of the robbery.  (*Id.* at 215, 218–20.)  At trial, an expert who examined the shoe print and Campbell's boot, testified that "[t]he general wear and the class characteristics present in the Item 1 right boot correspond with the general wear, design, physical size and shape of the 17FW1 partial footwear impression [from the bank counter]; therefore, the Item 1 right boot is a possible source of the 17FW1 impression." (Jan. 17, 2019 Tr. at 101–02, ECF No. 146.)

Contrary to Campbell's suggestion, counsel questioned the expert extensively about her conclusion, including noting that Nike shoes are common, pointing out that the differences in the print and the shoe could show that it was a different style of shoe, questioning why she did not reach out to Nike for the process of making the shoe, indicating that the impression was only a partial impression, noting that other companies use the same tread, and pointing out that shoe print analyses have been criticized by the

16

scientific community. (*Id.* at 103–11.) The jury heard this testimony and made their own

conclusions about the weight of the evidence. Beside complaining that the evidence was

"inconclusive," Campbell fails to identify with any specificity what other arguments

counsel should have made about the evidence of the shoe and the print. Counsel was

neither deficient nor was Campbell prejudiced. Claim Two (d) will be dismissed.

In Claim Three, Campbell argues that counsel rendered ineffective assistance by

failing to "raise an adequate adversarial protest to the evidence sent back to the jury

during deliberation"—a "(doo rag) which was located inside the gray/blue hooded

sweatshirt"—because it was not "shown in the initial inventory sheet at the outset of the

trial." (Mot. at 12–13.) Campbell claims that if counsel had argued that Campbell's

DNA was not on the doo rag or his sweatshirt, the jury would have found him not guilty.

(*Id.* at 13–14.) This argument makes little sense considering the testimony at trial.

Prior to trial, defense counsel was allowed to inspect the bag and the doo rag was

inadvertently not addressed during trial testimony. After the close of evidence, counsel

filed a position on Exhibit 48, which was the sweatshirt and what they referred to as a

"black bag" which appeared to be a hair covering for dreadlocks or the doo rag. (Jan. 22,

2019 Tr. at 2, ECF No. 148.) Counsel argued that because it has not been identified by

any witness or referred to by either counsel that it should not be sent back to the jury.

(*Id.* at 2–3.) Even though there was no testimony about the doo rag, and its existence had

not been referenced in front of the jury, the Court determined that because the doo rag

had no "incriminating value" and because it been admitted into evidence in the

sweatshirt, it should be submitted to the jury. (*Id.* at 4–5.)

17

An expert testified during trial, that the blue sweatshirt that was found in the pickup at Willis Lane had a mixture of DNA from five or more individuals. Upon counsel's questioning, she noted that she could not draw any conclusions about the DNA profiles on the sweatshirt because there were too many profiles for her to isolate a single one. (Jan. 17, 2019 Tr. at 38–39.) Thus, the jury heard that the sweatshirt could not be linked by DNA evidence to Campbell, but this did not exonerate him as he suggests. With respect to the doo rag found in the pocket of the sweatshirt, it is unclear what Campbell believes counsel should have argued. This item was not submitted for DNA testing and as the Court indicated, had "no incriminating value." (Jan. 22, 2019 Tr. at 2–3.) The Court fails to discern, and Campbell fails to explain, how the submission of the doo rag to the jury prejudiced him, or how it could have exonerated him. Campbell fails to show any deficiency of counsel or resulting prejudice with respect to the doo rag. Accordingly, Claim Three will be dismissed.

### 3.     Sentencing-Related Claim

In Claim Four, Campbell argues that counsel rendered ineffective assistance by not "object[ing] to sentencing factors within Presentence Report (PSR) that created a huge sentencing disparity" (Mot. at 14), because "Campbell's conviction and sentence for Aiding and Abetting a § 924(c) [conviction] is not considered a crime of violence and thus he should not have received the 7 years consecutive sentence and should have only received the 5 yrs consecutive sentence if a sentence at all for the § 924(c)." (*Id.* at 15.) Campbell cites *United States v. Taylor*, 596 U.S. 845 (2022) for the first proposition. (*Id.*) However, *Taylor* has no applicability to Campbell's case.

18

In *Taylor*, the Supreme Court affirmed the Fourth Circuit's determination that because "the elements of attempted Hobbs Act robbery do not invariably require 'the use, attempted use, or threatened use of physical force,' the offense does not qualify as a 'crime of violence' under § 924(c)." *United States v. Taylor*, 979 F.3d 203, 205 (4th Cir. 2020), *aff'd* 596 U.S. 845 (2022). First, Campbell's sentencing occurred prior to the Fourth Circuit's decision in *Taylor*. Second, Campbell was convicted of aiding and abetting bank robbery a completed offense, not an *attempt* offense. Finally, counsel clearly raised extensive arguments prior to trial about how aiding and abetting bank robbery should not qualify as a valid predicate for a § 924(c) offense. (*See* Mot. to Dismiss at 2–18, ECF No. 27; Dec. 7, 2018 Tr. at 3–15, 18, ECF No. 143.) The Court rejected these arguments. (Mem. Op. at 1–11, ECF No. 38; Dec. 7, 2018 Tr. at 18.) Campbell appears to fault counsel for not attempting to relitigate these arguments at sentencing. However, sentencing was not the appropriate place to advance such arguments that the Court had already rejected. Campbell fails to demonstrate any deficiency of counsel or resulting prejudice.

To the extent that Campbell faults counsel for failing to argue that he should only receive a five-year consecutive sentence for the § 924(c) count, instead of a seven-year consecutive sentence, this argument also lacks merit. The evidence at trial demonstrated that Campbell brandished the firearm, therefore, a seven-year sentence was required by statute. Campbell fails to identify what argument counsel could have made to reduce his sentencing exposure for the firearm count. Accordingly, counsel was neither deficient nor was Campbell prejudiced. Claim Four lacks merit and will be dismissed.

### III.   CONCLUSION

For the foregoing reasons, Campbell's § 2255 Motion (ECF No. 227) will be

denied.  The action will be dismissed.  A certificate of appealability will be denied.

An appropriate Order will accompany this Memorandum Opinion.

_____ /s/

Henry E. Hudson
Senior United States District Judge

Date: **April 30, 2024**
Richmond, Virginia

20